## GIBBONS v. MAHON.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 16. Argued December 19, 20, 1888. — Decided May 19, 1890.

Under a will bequeathing stock in a corporation and government bonds, in trust to pay " the dividends of said stock and the interest of said bonds as they accrue " to a daughter of the testator "during her lifetime, without percentage of commission or diminution of principal," and directing that upon her death " the said stocks, bonds and income shall revert to the estate " of the trustee, " without incumbrance or impeachment of waste," a stock dividend declared by a corporation which from time to time, before and after the death of the testator, has invested accumulated earnings in its permanent works and plant, and which, since his death, has been authorized by statute to increase its capital stock, is an accretion to capital, and the income thereof only is payable to the tenant for life.

THIS was a bill in equity by Mary Ann Gibbons against Jane Owen Mahon to compel the transfer to the plaintiff of shares in the Washington Gaslight Company held by the defendant as trustee under the will of Ann W. Smith. The case was heard upon bill and answer, by which, and by the acts of Congress concerning that company, the facts appeared to be as follows:

Mrs. Smith, a widow, and the mother of both parties to this suit, died March 26, 1865, owning two hundred and eighty shares in that company, and leaving a last will, dated February 11, 1865, and admitted to probate April 8, 1865, containing the following bequest:

" I hereby give, devise and bequeath to my daughter, Jane Owen Mahon, wife of David W. Mahon, of the city of Washington aforesaid, and to her heirs and assigns, two hundred and eighty shares of stock of the Washington Gaslight Company, also forty-five shares of stock of the Franklin Insurance Company, both in the city of Washington aforesaid; also eight thousand five hundred dollars in government bonds of the government of the United States of America; said stock and bonds or any portion of them remaining at my death a

part of my said estate ; to have and to hold the same in and upon the trusts and provisions following : That is to say, in trust for the advantage and behoof of my said daughter, Mary Ann Gibbons; and that after my decease the said Jane Owen Mahon, her heirs and assigns, shall cause the dividends of said stock and the interest of said bonds as they accrue to be paid to my said daughter, Mary Ann Gibbons, during her lifetime, without percentage of commission or diminution of principal; and in case of the death of the said Mary Ann Gibbons, then the said stocks, bonds and income shall revert to the estate of my said daughter, Jane Owen Mahon, without incumbrance or impeachment of waste."

The Washington Gaslight Company was incorporated by the act of Congress of July 8, 1848, c. 96, with a capital of $50,000, divided into shares of $20 each. 9 Stat. 722. It was authorized to increase its capital stock to $350,000 by the act of August 2, 1852, c. 79, and to $500,000 by the act of January 3, 1855, c. 22. 10 Stat. 734, 835. At the death of the testatrix, the capital stock amounted to $500,000, consisting of 25,000 shares of $20 each. By the act of May 24, 1866, c. 97, the capital stock was increased to $1,000,000. 14 Stat. 53.

The company from time to time declared and paid dividends in money upon its stock, and such dividends were paid by the defendant to the plaintiff.

Before and after the death of Mrs. Smith, and before and after the passage of the act of 1866, and before November 1, 1868, the company from time to time invested portions of its net earnings, income and profits in the enlargement and extension of its permanent works and plant employed in its legitimate business under its charter; and the actual cost of its works and plant, as shown by its construction account, amounted on January 1, 1865, to $842,623.02 ; on January 1, 1866, to $892,224.08 ; on January 1, 1867, to $935,039.55 ; on January 1, 1868, to $963,803.37 ; on July 1, 1868, to $988,914.84 ; and on January 1, 1869, to $1,039,287.17 ; and amounted, in fact, at the time of the passage of the act of 1866, to not less than $900,000, and on October 1, 1868, to more than $1,000,000.

On November 1, 1868, the board of directors of the company adopted the following resolution : " Whereas the construction account of this company exceeds one million of dollars, and as the capital of the company has been increased by an act of Congress to one million of dollars, therefore be it resolved, that the increased stock be awarded among the stockholders, share for share, as they stood on the first of October, 1868."

On September 29, 1868, the defendant surrendered to the company the certificate for the two hundred and eighty shares mentioned in Mrs. Smith's will, and those shares were transferred on the books of the company to the name of the defendant, as trustee; and on November 17, 1868, the company made out and delivered to the defendant, as trustee, a certificate for the five hundred and sixty shares.

The defendant paid to the plaintiff from time to time the dividends afterwards declared on the five hundred and sixty shares, but never transferred to her the two hundred and eighty new shares.

The court dismissed the bill; and delivered an opinion reported in 4 Mackey, 130 ; and the plaintiff appealed to this court.

*Mr. Henry E. Davis* for appellant.

I. By the terms of Mrs. Smith's will, the appellee holds the original 280 shares "for the advantage and behoof" of the appellant, whom the will entitles to receive the dividends of those shares, as such dividends accrue, during her lifetime.

(*a*) What are dividends ?

Whether the testator makes use of the expression, " dividends," or " dividends and profits," or "dividends, interest and profits," or "interest, dividends, profits and proceeds," all of them come to the same thing, and furnish no circumstance to found a distinction upon. *Hooper* v. *Rossiter*, 1 McClel. 527, 536.

" Dividends," as used in the will, is unqualified ; it includes, in its technical sense, as well as in its ordinary and com-

mon acceptation, all distributions to corporators of the profits of the corporation, whether such distributions are large or small, or whether made at long or short intervals, and without any regard to the manner or place of their declaration or *mode of payment*. *Clarkson* v. *Clarkson*, 18 Barb. 646, 657.

Dividends, accordingly, may take various forms. The ordinary form is the distribution of money to shareholders, but common forms are those known as stock and scrip dividends. If the definition given by the court in *Clarkson* v. *Clarkson* be accepted, as it should be, the question involved is readily answered: By the terms of that definition the appellant is clearly entitled to the 280 new shares; for —

(*b*) The new shares are in effect and in substance a stock dividend. *Daland* v. *Williams*, 101 Mass. 571, 574; *Rand* v. *Hubbell*, 115 Mass. 461; *Commonwealth* v. *Pittsburg, Fort Wayne &c. Railroad Co.*, 74 Penn. St. 83; *Bailey* v. *Railroad Co.*, 22 Wall. 604, 635, 636.

(*c*) And the tenant for life of stock is entitled to all dividends declared thereon during his life, irrespective of the time when they were earned, provided only that they do not impair the capital of the trust fund. *Bates* v. *Mackinley*, 31 Beavan, 280; *Richardson* v. *Richardson*, 75 Maine, 570; *Goodwin* v. *Hardy*, 57 Maine, 143; *S. C.* 99 Am. Dec. 758; *Jermain* v. *Lake Shore Railroad Co.*, 91 N. Y. 483. And it is immaterial whether the dividend be in stock or in money; any distinction on that score being, in the language of Lord Eldon, "too thin." *Paris* v. *Paris*, 10 Ves. 185.

II. But the question, though seemingly simple, has been much considered by courts, and an examination of the reported cases will reveal much difference upon the subject.

(*a*) *The English adjudications.* The leading cases on the subject in England are: *Brander* v. *Brander*, 4 Ves. 800; *Irving* v. *Houston*, 4 Paton, 521; *Paris* v. *Paris*, 10 Ves. 185; *Clayton* v. *Gresham*, 10 Ves. 288; *Witts* v. *Steere*, 13 Ves. 363; *Barclay* v. *Wainewright*, 14 Ves. 66; *Price* v. *Anderson*, 15 Sim. 473; *Norris* v. *Harrison*, 2 Madd. 268; *Hooper* v. *Rossiter*, 13 Price, 774; *S. C.* 1 McClel. 527; *Cuming* v. *Boswell*, 2 Jurist (N. S.) 1005; *In re Barton's Trust*, L. R. 5 Eq. 238.

In the light of the earlier English adjudications, the law on the subject is thus stated in Hill on Trustees, 386: " It is settled that any extraordinary *bonus* or addition to the usual annual income of stock or other property, which is settled in trust for one for life with remainder over, must be treated as capital and added to the principal fund. The trustees, therefore, will not be justified in paying over these unusual additions to the beneficial tenant for life, but they must invest them for the benefit of all parties." But this statement is qualified in note 1 to the 4th American edition, and is disowned in *Clarkson* v. *Clarkson*, 18 Barb. 646, above cited, as well as in the later English cases, also above cited.

(*b*) *The rule established in Massachusetts.* If a fund held in trust to pay the income to one until his death, and then convey the capital to another, includes shares in the stock of a corporation, shares of additional stock distributed to the trustee as a lawful dividend thereon accrue as capital, although they represent the net earnings of the corporation. "A trustee needs some plain principle to guide him; and the *cestuis que trust* ought not to be subjected to the expense of going behind the action of the directors and investigating the concerns of the corporation, especially if it is out of our jurisdiction. A simple rule is to regard cash dividends, however large, as income, and stock dividends, however made, as capital. The court [A.D. 1868] are of opinion that this rule is more in conformity with the legal and equitable rights of shareholders than any other that has been suggested." *Minot* v. *Paine*, 99 Mass. 101; *S. C.* 96 Am. Dec. 705.

This case has since been followed in Massachusetts. In 1869, it was followed in *Daland* v. *Williams*, 101 Mass. 571. In the same year, in *Leland* v. *Hayden*, 102 Mass. 542, the court said: "We must regard the principle as settled that stock dividends are to be regarded as principal, and cash dividends as income;" and, in 1872, in *Rand* v. *Hubbell*, 115 Mass. 461, it was held: "By the law of this Commonwealth, as declared by this court, a dividend made in new stock is ordinarily to be deemed capital."

(*c*) *The New York cases.* In 1855, James J., delivering

the opinion of the court, after doubting the statement in Hill on Trustees, 386, above quoted, and citing the English cases, said :

" I am not satisfied with these decisions, and there is no sound principle upon which they can be upheld.

" I am satisfied that these decisions will never be followed in this country, and will be repudiated, if they are not already, in England. . . . The stock payment of 60 per cent made upon this investment was properly dividends, extraordinary in amounts, not in manner of payment, that being a matter of policy with the company. ' Dividends,' as used in the will, is unqualified. It includes, in its technical sense as well as in its ordinary and common acceptation, all distributions to corporators of the profits of the corporation, whether such distributions are large or small, or whether made at long or short intervals, and without any regard to the manner or place of their declaration or mode of payment. . . . The 60 per cent stock dividend, made December 30th, 1850, belonged to the tenants for life, and the trustees must be decreed to deliver over to them the said stock or its substitute and all income, dividend, or increase received thereon, or pay the value thereof." *Clarkson* v. *Clarkson*, 18 Barb. 646. This was followed in *Simpson* v. *Moore*, 30 Barb. 637; *In re Woodruff's Estate*, Tucker, 58; *In re Pollock*, 3 Redfield, 100; *Whitney* v. *Phœnix*, 4 Redfield, 180.

(*d*) *The rule in Pennsylvania* was laid down in *Earp's Appeal*, 28 Penn. St. 368. In *Wiltbank's Appeal*, 64 Penn. St. 256, that rule is defined as follows: " The principle established in that [*Earp's*] case is that the earnings or profits of stock made after death are income and not capital, even though in *form* of capital by the issue of new stock. *Equity, seeking the substance of things, found that the new stock was but a product and was therefore income. Precisely so it is here, equity discovers the subject of controversy is a mere product, a right incidental to the stock, and is therefore income.*" See also *Moss's Appeal*, 83 Penn. St. 264; *Biddle's Appeal*, 99 Penn. St. 278; and *Vinton's Appeal*, 99 Penn. St. 434.

(*e*) *The rule in New Jersey.* In *Van Doren* v. *Olden*, 19 N. J.

Eq. 176 ; *S. C.* 97 Am. Dec. 650 ; Chancellor Zabriskie, after citing *Earp's Appeal*, *Clarkson* v. *Clarkson* and *Simpson* v. *Moore*, said : " The principle upon which these cases are decided I hold to be the correct one, by which I must be guided in preference to the early English decisions. That principle is that where trust funds, of which the income, interest or profits are given to one person for life, and the principal bequeathed over upon the death of the life tenant, are invested either by the trustees, or at the death of the testator, in stock or shares of an incorporated company, the value of which consists in part of an accumulated surplus or undivided earnings laid up by the company, as is frequently the case, such additional value is part of the capital; that this, as well as the par value of the shares, must be kept intact for the benefit of the remainderman ; but the earnings on such capital, as well as upon the par value of the shares, belong to the life tenant ; and when an extra dividend is declared out of the earnings or profits of the company such extra dividend belongs to the life tenant, unless part of it was earnings carried to account of accumulated profits or surplus earnings at the death of the testator, or at the time of the investment, if made since his death, in which case so much must be considered as part of the capital." This ruling was followed in *Ashurst* v. *Field*, 26 N. J. Eq. 1.

(*f*) *The decisions in New Hampshire.* A testator gave to his son the income of two shares in a corporation during his life, the shares, on his decease, to go to the testator's heirs. $500 had been paid in on each share constituting the original estate, but by increase in the value of the property of the corporation, the shares were, at the time of the making of the will, of the value of about $1500 each, and it appeared that the testator so valued them in making the bequest. The corporation having made regular dividends of income up to a certain date, after the decease of the testator, at that time voted to sell its property and divide the proceeds, which was done ; *Held*, in 1846, that the dividends received by the executor after this vote were to be regarded as dividends of the capital, substituted for the shares, and that the son was entitled to the income which should be derived from the sums so received, the

principal, on his decease, belonging to the heirs. *Wheeler* v. *Perry*, 18 N. H. 307. See also *Lord* v. *Brooks*, 52 N. H. 72; *Peirce* v. *Burroughs*, 58 N. H. 302.

In no other of the United States has the question been considered, except, in 1881, in Georgia, where it is governed by the code of that State. See *Millen* v. *Guerrard*, 67 Georgia, 284.

An examination of the authorities above cited shows on how unsound a basis the rule in England and Massachusetts rests. The intention of the corporation making the dividend seems to be given paramount consideration in those jurisdictions.

This "intention of the corporation" and the simplicity claimed for the rule of *Minot* v. *Paine* are the supports, and the only supports of the English and Massachusetts rule. The New Hampshire court emphatically and, as I submit, most properly denies to corporations the right to make or change the wills of their stockholders, and the Pennsylvania court does not scruple at characterizing the "simple rule" of Massachusetts as "bungling." If simplicity of the rule to guide trustees be alone sufficient to support a principle, what simpler rule can there be than to give the life tenant all dividends, whether in cash or in stock?

The true rule is that laid down in *Bates* v. *Mackinley*: No matter when a dividend was earned or how long the profits to be distributed have been accumulating, the person entitled to the dividends at the time of declaration should have all dividends from profits or earnings without regard to their form. This is a "simple rule for the guidance of trustees;" it avoids all difficulties as to accounting; preserves the integrity of corporate action; makes no disturbance of corporate management; and, recognizing all individual interests, assures the harmonious continuance of corporate existence and the unembarrassed exercise of corporate functions: results attainable on no other principle, and to which all other considerations should, within due limits, be subordinated so long as corporations hold their place as accredited instruments of industrial and commercial enterprise not inconsistent with individual

interest. The clear reasoning in *Lord* v. *Brooks* logically leads to this position and in its thoroughness refutes all arguments to the contrary.

*Mr. J. Hubley Ashton* for appellee.

MR. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

The question presented by the claims made in the bill and answer, and by the arguments of counsel, is whether the two hundred and eighty new shares of stock in the Washington Gaslight Company are to be treated as dividends, to the whole or part of the principal of which the plaintiff is entitled under the will, or are to be treated as an increase of the capital of the trust fund, and the plaintiff therefore entitled to receive only the income thereof.

The court below held that the new shares must be treated as capital, the income only of which was payable to the plaintiff. She contends that the new shares are in the nature of a dividend, to the whole of which she is entitled, or, if that position should not be maintained, that so much of the new shares as represents earnings made by the corporation since the death of the testatrix should be held to be income payable to her. Upon full consideration of the case, on reason and authority, this court is of opinion that the decision below is correct.

The distinction between the title of a corporation, and the interest of its members or stockholders, in the property of the corporation, is familiar and well settled. The ownership of that property is in the corporation, and not in the holders of shares of its stock. The interest of each stockholder consists in the right to a proportionate part of the profits whenever dividends are declared by the corporation, during its existence under its charter, and to a like proportion of the property remaining, upon the termination or dissolution of the corporation, after payment of its debts. *Van Allen* v. *Assessors*, 3 Wall. 573, 584; *Delaware Railroad Tax*, 18 Wall. 206, 230; *Tennessee*

v. *Whitworth,* 117 U. S. 129, 136 ; *New Orleans* v. *Houston,* 119 U. S. 265, 277.

Money earned by a corporation remains the property of the corporation, and does not become the property of the stock-holders, unless and until it is distributed among them by the corporation. The corporation may treat it and deal with it either as profits of its business, or as an addition to its capital. Acting in good faith and for the best interests of all concerned, the corporation may distribute its earnings at once to the stockholders as income ; or it may reserve part of the earnings of a prosperous year to make up for a possible lack of profits in future years ; or it may retain portions of its earnings and allow them to accumulate, and then invest them in its own works and plant, so as to secure and increase the permanent value of its property.

Which of these courses shall be pursued is to be determined by the directors, with due regard to the condition of the com-pany's property and affairs as a whole; and, unless in case of fraud or bad faith on their part, their discretion in this respect cannot be controlled by the courts, even at the suit of owners of preferred stock, entitled by express agreement with the corporation to dividends at a certain yearly rate, " in prefer-ence to the payment of any dividend on the common stock, but dependent on the profits of each particular year, as de-clared by the board of directors." *New York, Lake Erie & Western Railroad* v. *Nickals,* 119 U. S. 296, 304, 307.

Reserved and accumulated earnings, so long as they are held and invested by the corporation, being part of its corpo-rate property, it follows that the interest therein, represented by each share, is capital, and not income, of that share, as between the tenant for life and the remainderman, legal or equitable, thereof.

Whether the gains and profits of a corporation should be so invested and apportioned as to increase the value of each share of stock, for the benefit of all persons interested in it, either for a term of life or of years, or by way of remainder in fee; or should be distributed and paid out as income, to the tenant for life or for years, excluding the remainder

man from any participation therein; is a question to be determined by the action of the corporation itself, at such times and in such manner as the fair and honest administration of its whole property and business may require or permit, and by a rule applicable to all holders of like shares of its stock; and cannot, without producing great embarrassment and inconvenience, be left open to be tried and determined by the courts, as often as it may be litigated between persons claiming successive interests under a trust created by the will of a single shareholder, and by a distinct and separate investigation, through a master in chancery or otherwise, of the affairs and accounts of the corporation, as of the dates when the provisions of the will of that shareholder take effect, and with regard to his shares only.

In ascertaining the rights of such persons, the intention of the testator, so far as manifested by him, must of course control; but when he has given no special direction upon the question as to what shall be considered principal and what income, he must be presumed to have had in view the lawful power of the corporation over the use and apportionment of its earnings, and to have intended that the determination of that question should depend upon the regular action of the corporation with regard to all its shares.

Therefore, when a distribution of earnings is made by a corporation among its stockholders, the question whether such distribution is an apportionment of additional stock representing capital, or a division of profits and income, depends upon the substance and intent of the action of the corporation, as manifested by its vote or resolution; and ordinarily a dividend declared in stock is to be deemed capital, and a dividend in money is to be deemed income, of each share.

A stock dividend really takes nothing from the property of the corporation, and adds nothing to the interests of the shareholders. Its property is not diminished, and their interests are not increased. After such a dividend, as before, the corporation has the title in all the corporate property; the aggregate interests therein of all the shareholders are represented by the whole number of shares; and the proportional interest.

of each shareholder remains the same. The only change is in the evidence which represents that interest, the new shares and the original shares together representing the same proportional interest that the original shares represented before the issue of new ones.

In *Bailey* v. *Railroad Co.*, 22 Wall. 604, cited for the plaintiff, the point decided was that certificates, issued by a railroad corporation to its stockholders as representing earnings which had been used in the construction and equipment of its road, and payable, at the option of the company, with dividends like those paid on the stock, were within that provision of the internal revenue laws, which enacted that any railroad company "that may have declared any dividend in scrip or money due or payable to its stockholders," "as part of the earnings, profits, income or gains of such company, and all profits of such company carried to the account of any fund, or used for construction, shall be subject to and pay a tax of five per centum on the amount of all such" "dividends or profits, whenever and wherever the same shall be payable, and to whatsoever party or person the same may be payable." Acts of June 30, 1864, c. 173, § 122, 13 Stat. 284; July 13, 1866, c. 184, § 9, 14 Stat. 138, 139. The question at issue was not between the owners of successive interests in particular shares, but between the corporation and the government, and depended upon the terms of a statute carefully framed to prevent corporations from evading payment of the tax upon their earnings. The opinion delivered by Mr. Justice Clifford, though containing some general expressions which, taken by themselves, might seem to ignore the settled distinction, (affirmed by this court in earlier and later cases above cited,) between the property of the corporation and the interests of the shareholders, yet explicitly recognized that "net earnings of such a company may be expended in constructing or equipping the railroad, or in the purchase of real estate or other properties," and "may be distributed in dividends of stock or of scrip or of money;" that "purchasers of stock have a right to claim and receive all dividends subsequently declared, no matter when the fund appropriated for the purpose was earned;" that, "as a general

rule, stock dividends, even when they represent net earnings, become at once a part of the capital of the company," and that "such a dividend, if earned and declared, necessarily increases the value of the old stock, if new stock is not issued, and in that mode reaches substantially the same result." 22 Wall. 635–637.

In Great Britain, it is well settled that where a corporation, whether authorized or unauthorized by law to increase its capital stock, accumulates and invests part of its earnings, and afterwards apportions them among its shareholders as capital, the amount so apportioned must be deemed an accretion to the capital of each share, the income of which only is payable to a tenant for life.

From the beginning of this century, it has been established, by decisions of the Court of Chancery in England, and of the House of Lords on appeal from Scotland, that where a bank, having no power by law to increase its capital stock, has used its accumulated profits as floating capital, and invested them in securities which can be turned into cash at pleasure, an extraordinary dividend or bonus declared out of such profits is capital, and not income, of each share, as between owners of the life interest and of the interest in remainder therein, without inquiring into the time when the profits were actually earned. *Brander* v. *Brander*, 4 Ves. 800; *Irving* v. *Houstoun*, 4 Paton, 521; *Cuming* v. *Boswell*, 2 Jurist (N. S.) 1005, 1008; *S. C.* 28 Law Times Rep. 344; 1 Paterson, 652. In *Irving* v. *Houstoun*, Lord Eldon (Lord Rosslyn and Lord Alvanley concurring) said that if an owner of bank stock " gives the life interest of his estate to any one, it can scarcely be his meaning that the liferenter should run away with a bonus that may have been accumulating on the floating capital for half a century;" and that to take an account of the precise amount of profits which had accumulated before and after the commencement of the life interest in particular shares would lead to inconveniences which would be intolerable. 4 Paton, 530, 531. In *Cuming* v. *Boswell*, above cited, and relied on by the present plaintiff, the person held entitled to bonuses declared on bank stock was, as stated in the judgment delivered by Lord Cranworth,

"not a liferenter but an absolute fiar," in other words, not a mere tenant for life, but an owner in fee, although his estate was determinable by his death without issue.

It is unnecessary, for the purposes of this case, to consider how far the English decisions upon the question whether a dividend in money, not declared to be made out of accumulated earnings, should be considered as capital or as income, can be reconciled with each other, or with sound principle. But there are two recent cases of great authority, concerning stock dividends, which directly bear upon the question before us.

In one of those cases, shares in a steam navigation company were settled by their owner upon trust to pay "the interest, dividends, shares of profits or annual proceeds" to a woman during her life, and after her death in trust for her children. The directors, acting within the scope of their authority, retained part of a half-year's profits, and applied it to pay for new boats, and the company passed a resolution to issue to existing shareholders new shares representing the money so applied. It was argued that "the company had no power to compel the tenant for life to risk any more in the venture than the shares originally held, and could not be allowed for themselves, by declaring or withholding a dividend out of the profits, to alter the rights as between tenant for life and remainderman." But Vice Chancellor Wood (afterwards Lord Chancellor Hatherley) held otherwise, and said: "As long as the company have the profits of the half-year in their hands, it is for them to say what they will do with it, subject, of course, to the rules and regulations of the company." "The dividend to which a tenant for life is entitled is the dividend which the company chooses to declare. And when the company meet and say that they will not declare a dividend, but will carry over some portion of the half-year's earnings to the capital account, and turn it into capital, it is competent for them, I apprehend, to do so; and when this is done, everybody is bound by it, and the tenant for life of those shares cannot complain. The only mode in which a tenant for life could act would be to use his influence with his

trustees as to their votes with reference to the proposed arrangement." "If a man has his shares placed in settlement, he gives his trustees, in whose names they stand, a power of voting, and he must use his influence to get them to vote as he wishes. But where the company, by a majority of their votes, have said that they will not divide this money, but turn it all into capital, capital it must be from that time. I think that is the true principle, and I must hold that these additional shares formed part of the capital fund under the settlement, and went to the children, and not to the tenant for life (their mother)." *Barton's Trust,* L. R. 5 Eq. 238, 243–245.

In the most recent English case on the subject, William Bouch bequeathed to his executor, in trust for his widow for life, and after her death to the executor, his personal estate, including shares in an iron company, whose directors had power, before recommending a dividend, to set apart out of the profits such sums as they thought proper as a reserved fund, for meeting contingencies, equalizing dividends or repairing or maintaining the works. Four years after the testator's death, the company, upon the recommendation of the directors, and out of a fund so reserved in the testator's lifetime, and of undivided profits, about half of which accrued before his death, made a bonus dividend, and an allotment of new shares, with liberty to each shareholder to apply the bonus dividend in payment for the new shares. Bouch's executor took the new shares and applied the bonus dividend in payment therefor. The House of Lords, reversing the judgment of the Court of Appeal, and restoring an order of Mr. Justice Kay, held that the corporation did not pay or intend to pay any sum as a dividend, but intended to and did appropriate the undivided profits as an increase of the capital stock; that the bonus dividend was therefore capital of the testator's estate, and the widow was not entitled either to the bonus or to the new shares. The difference of opinion was not as to the general principle which should govern, but only as to its application to the action of the corporation in the particular case. The House of Lords fully approved the statements of the general principle by Vice Chancellor Wood in *Barton's Trust,* above

cited, and by Lord Justice Fry, in delivering the judgment of the Court of Appeal, as follows: " When a testator or settlor directs or permits the subject of his disposition to remain as shares or stock in a company which has the power either of distributing its profits as dividend, or of converting them into capital, and the company validly exercises this power, such exercise of its power is binding on all persons interested under him, the testator or settlor, in the shares; and consequently what is paid by the company as dividend goes to the tenant for life, and what is paid by the company to the shareholder as capital, or appropriated as an increase of the capital stock in the concern, enures to the benefit of all who are interested in the capital. In a word, what the company says is income shall be income, and what it says is capital shall be capital." "In most, if not in all cases, the inquiry as to the time when the profits were earned by the company is an immaterial one as between the tenant for life and remainderman. Their rights have been made dependent on the legitimate action of the company, and" (subject to any rights arising from the law of apportionment, which was not in question) "are determined by the time, not at which the profits are earned by the company, but at [by] the time at which they are by the action of the company made divisible among its members." *Sproule* v. *Bouch*, 29 Ch. D. 635, 653, 658, 659; *Bouch* v. *Sproule*, 12 App. Cas. 385, 397, 402, 407, 408.

The same principle was established in Massachusetts before the case of *Sproule* v. *Bouch* had come before the courts of England. *Atkins* v. *Albree*, 12 Allen, 359; *Minot* v. *Paine*, 99 Mass. 101; *Daland* v. *Williams*, 101 Mass. 571; *Leland* v. *Hayden*, 102 Mass. 542; *Rand* v. *Hubbell*, 115 Mass. 461; *Gifford* v. *Thompson*, 115 Mass. 478. And in Connecticut, Rhode Island and Maine, a dividend of new shares, representing accumulated earnings, is held to be capital and not income. *Brinley* v. *Grou*, 50 Conn. 66; *Brown's petition*, 14 R. I. 371; *Richardson* v. *Richardson*, 75 Maine, 570, 574.

In New York, the recent judgments of the Court of Appeals appear to have practically overruled the decisions of the lower courts in *Clarkson* v. *Clarkson*, 18 Barb. 646; *Simpson* v.

*Moore,* 30 Barb. 637 ; *Woodruff's Estate,* Tucker, 58, and *In re Pollock,* 3 Redfield, 100, cited in behalf of the plaintiff; and to have settled the law of that State in accordance with that of England and of Massachusetts.

In *Hyatt* v. *Allen,* 56 N. Y. 553, the defendant, by a contract made August 11, 1871, under which he transferred to the plaintiffs certain stock in a manufacturing corporation, agreed to pay them "all profits and dividends of and upon the stock up to the first day of January, 1872." In April, 1872, the corporation declared a dividend of fifteen dollars a share, five sixteenths of which were found by a referee to have been derived from the increase in value of its property between August 11, 1871, and January 1, 1872 ; and the court below gave judgment for the plaintiff for that proportion of the dividend. But the Court of Appeals reversed the judgment, and said : "A shareholder in a corporation has no legal title to the property or profits of the corporation until a division is made." "When, therefore, a contract is made in relation to dividends or profits, it must be deemed to have reference to dividends or profits to be ascertained and declared by the particular company, and not to growing profits from day to day, or month to month, to be ascertained upon an investigation by third persons, or courts of justice, into the accounts and transactions of the company." 56 N. Y. 557, 558.

In *Williams* v. *Western Union Telegraph Co.,* 93 N. Y. 162, the Court of Appeals, in the course of an elaborate discussion of the right of a corporation, when unrestrained by statute, to make a stock dividend, said : "When a corporation has a surplus, whether a dividend shall be made, and if made, how much it shall be, and when and where it shall be payable, rest in the fair and honest discretion of the directors uncontrollable by the courts." "Whether they shall be made in cash or property must also rest in the discretion of the directors." "Desiring to use the surplus and add it to the permanent capital of the company, and having lawfully created shares of stock, they could issue to the stockholders such shares to represent their respective interests in such surplus." "After a stock dividend a corporation has just as

much property as it had before. It is just as solvent and just as capable of meeting all demands upon it. After such a dividend the aggregate of the stockholders own no more interest in the corporation than before. The whole number of shares before the stock dividend represented the whole property of the corporation, and after the dividend they represent that and no more. A stock dividend does not distribute property, but simply dilutes the shares as they existed before." 93 N. Y. 192, 189.

Finally, in *Kernochan's Case*, 104 N. Y. 618, the Court of Appeals applied the same rules as between the remainderman and the person entitled for life to the income of shares bequeathed in trust; rejected the test of determining what part of a cash dividend should be deemed principal and what part income by ascertaining how much was earned before and how much after the death of the testator; approved the general principle laid down in the cases of *Barton's Trust*, L. R. 5 Eq. 238, 245, and *Sproule* v. *Bouch*, 29 Ch. D. 635, 653, above cited; and said: "From the shares in question no income could accrue, no profits arise to the holder, until ascertained and declared by the company and allotted to the shareholder; and that act should be deemed to have been in the mind of the testator, and not the earnings or profits as ascertained by a third person, or a court, upon an investigation of the business and affairs of the company, either upon an inspection of their books or otherwise." "The rule is a reasonable and proper one, which limits the rights of a stockholder to profits by the action of the managers of a corporation or company. It is their sole and exclusive duty to divide profits and declare dividends whenever, in their judgment, the condition of the affairs of the corporation renders it expedient; and it would lead to great embarrassment and confusion if a court should undertake to interfere with their discretion so long as they do not go beyond the scope of their powers and authority." 104 N. Y. 628, 629.

In *Earp's Appeal*, 28 Penn. St. 368, on the other hand, the Supreme Court of Pennsylvania declined to follow the early English cases, and adopted the rule, that where a corporation,

after having accumulated large surplus profits for many years before and since the death of the testator, increased its capital stock, and issued additional shares to the stockholders, so much of the surplus profits as had accumulated in the lifetime of the testator should be deemed capital, and so much as had accumulated since his death should be deemed income; and in *Wiltbank's Appeal*, 64 Penn. St. 256, where a corporation voted to increase its capital stock by an issue of new shares to be subscribed and paid for by the stockholders, and a trustee holding shares sold the right to take some new shares, and took others and sold them at an advance, that rule was carried so far as to hold that the sums so received by the trustee were income of the old shares, for the reason that the right to subscribe to new shares, the court thought, " was not a part of the capital of the old stock, but a mere product of an advantage belonging to it," " a right incidental to the stock and therefore income." The rule upon which those two cases proceeded has since been treated as settled in Pennsylvania, although there has been some difficulty, if not inconsistency, in applying it; and in one case Mr. Justice Paxson, now Chief Justice of Pennsylvania, spoke of both those cases as exceptional and depending on peculiar circumstances. *Moss's Appeal*, 83 Penn. St. 264, 269, 270; *Biddle's Appeal*, 99 Penn. St. 278; *Vinton's Appeal*, 99 Penn. St. 434. The only other States, so far as we are informed, in which the Pennsylvania rule prevails, are New Jersey and New Hampshire. *Van Doren* v. *Olden*, 4 C. E. Green, 176; *Ashhurst* v. *Field*, 11 C. E. Green, 1; *Van Blarcom* v. *Dager*, 4 Stew. Eq. 783, 793; *Lord* v. *Brooks*, 52 N. H. 72; *Peirce* v. *Burroughs*, 58 N. H. 302, 303. Upon the grounds already stated, that rule appears to us to be open to grave objections, both in principle and in application, as well as opposed to the weight of authority.

In the case at bar, the testatrix bequeathed to her daughter, Jane Owen Mahon, two hundred and eighty shares of stock in the Washington Gaslight Company, as well as some shares in an insurance company and bonds of the United States, " in trust for the advantage and behoof of " her daughter, Mary Ann Gibbons; and directed that after the decease of the tes-

tatrix the trustee should " cause the dividends of said stock and the interest of said bonds, as they accrue, to be paid to my said daughter, Mary Ann Gibbons, during her lifetime, without percentage of commission or diminution of principal. And in case of the death of the said Mary Ann Gibbons, then the said stock, bonds and income shall revert to the estate of my said daughter, Jane Owen Mahon, without incumbrance or impeachment of waste."

Upon the face of the will, it is manifest that the testatrix used the word "dividends" as having the same scope and meaning as "income" and "interest," and nothing more; and intended that the plaintiff, as equitable legatee for life, should take the income, and the income only, of the shares owned by the testatrix at the time of her death; and that the whole capital of those shares, unimpaired, should go to the defendant, as legatee in remainder.

The admitted facts present the following state of things: The accumulated earnings of the company were kept undivided, and actually added to the capital of the corporation, by investing them from time to time in its permanent works and plant, until the value of the works and plant amounted to a million dollars ; no owner of particular shares, or of any interest therein, had the right to compel the company to divide or apportion those earnings; and while they remained so undivided and invested, the capital stock of the company was increased to the same amount by the act of Congress of May 24, 1866. The greater part of the earnings in question had been so invested before the making of the will and the death of the testatrix in 1865, a still larger proportion before the passage of the act of Congress of 1866, and the whole before the resolution of the directors of November 1, 1868, under which the new shares were issued to the defendant, and in which it was recited, in accordance with the truth, that the construction account of the company exceeded $1,000,000, and that its capital had been increased by act of Congress to that amount, and it was therefore "resolved, that the increased stock be awarded among the stockholders, share for share, as they stood on the 1st of October, 1868."

To hold the plaintiff to be entitled to the whole of the new shares issued to the defendant would be to allow the plaintiff the exclusive benefit of earnings, the greater part of which had accrued and had been invested by the company as capital before her interest began, and would be contrary to all the authorities. To award to her a proportion of those shares, based upon an account of how much of those earnings actually accrued after the death of the testatrix, would be to substitute the estimate of the court for the discretion of the corporation, lawfully exercised through its directors, and would be open to the practical inconveniences already stated.

The resolution is clearly an apportionment of the new shares as representing capital, and not a distribution or division of income. As well observed by Mr. Justice James, delivering the opinion of the court below: "Certificates of stock are simply the representative of the interest which the stockholder has in the capital of the corporation. Before the issue of these two hundred and eighty new shares, this trustee held precisely the same interest in this increased plant in the capital of the corporation, that she held afterwards. She merely had a new representative of an interest that she already owned, and which was not increased by the issue of the new shares. A dividend is something with which the corporation parts, but it parted with nothing in issuing this new stock. It simply gave a new evidence of ownership which already existed. They were not in any sense, therefore, dividends for which this trustee had to account to the *cestui que trust.* She stood after the issue of the new shares just as she had stood before; and the trustee was obliged to treat them just as she did, namely, as a part of the original, and to pay the dividends to the *cestui que trust.*" 4 Mackey, 136

*Decree affirmed.*

Mr. Justice Brewer, not having been a member of the court when this case was argued, took no part in the decision.