4 So.2d 170

**FIRST NAT. BANK OF TUSKALOOSA**
**v. HILL et al.**

**6 Div. 861.**

Supreme Court of Alabama.

Oct. 9, 1941.

McQueen & McQueen, of Tuscaloosa, for appellees.

Foster, Rice, Madison & Rosenfeld, of Tuscaloosa, for appellant.

**LIVINGSTON, Justice.**

This is a bill in equity to determine the ownership of a stock dividend declared by the First National Bank of Tuskaloosa on January 15, 1923, and represented by certificate No. 157, and a two per cent. cash dividend of $10 declared by said bank, payable to the stockholders of the bank of record as of December 30, 1939. The two per cent. cash dividend of $10 declared on the stock represented by certificate No. 157 has not been paid by the bank to any one. The bill also prays for a sale for division of certificate No. 157. `

The record discloses that Martha Hill, a resident of Tuscaloosa County, Alabama, died in the year 1895, leaving a last will and testament which was duly admitted to probate and recorded in the Probate Court of Tuscaloosa County. At the time of her death Martha Hill was the owner, in her own right, of twenty shares of the common capital stock of the First National Bank of Tuskaloosa,—said stock then being of the par value of $100 per share.

Item 6 of the will of Martha Hill is as follows: "It is my will and desire that whenever and as often as any dividend on my stock of two thousand dollars par value in the First National Bank of Tuskaloosa shall be declared during the joint lives of my three sisters, Elizabeth S. Foster, Augusta Foster and Mary E. Foster, all of said dividends shall be equally divided between them; and that when one of them dies each and every dividend declared on said stock during the joint lives of the two survivors shall be equally divided between them; and that when another one of them dies, all of every dividend declared on said stock during the life of the survivor, shall be paid to her and that when the last one of them dies the said bank stock shall be equally divided between my two sons, H. Foster Hill and Alonzo Hill."

On May 30, 1894, Martha Hill executed a codicil to her last will and testament, item 2 of which is as follows: "Whereas my son Alonzo Hill has died since my foregoing will and testament was signed, sealed and declared and published, therefore, I hereby give, devise and bequeath to his children, to be equally divided between them all and singular the property and interest given, devised and bequeathed to my said son Alonzo Hill in my said will and testament."

Augusta Foster, the last survivor of the three sisters of Martha Hill, who are mentioned in item 6 of the will; died on December 23, 1936, leaving a last will and testament in which she gave, devised and bequeathed all of her property to Florence Hill Foster. Florence Hill Foster died on December 4, 1937, leaving a last will and testament, in which the First National Bank of Tuskaloosa was named as executor. Letters testamentary were duly and legally issued to said bank, and the administration of the estate of Florence Hill Foster is now pending in the Circuit Court of Tuscaloosa County, in equity, having been duly removed thereto.

On January 15, 1923, the First National Bank of Tuskaloosa, acting by and through its board of directors, declared a fifty per cent. stock dividend on all of its shares of common stock then outstanding, and certificate No. 157 for ten shares of the common capital stock of said bank was issued to the "Estate of Martha Hill," representing the said stock dividend so declared on the original twenty shares of common capital stock of said bank, which were owned by Martha Hill at the time of her death, but the bank retained and still retains possession of said certificate. All dividends payable in cash which have been heretofore declared by said bank on its stock since the death of Martha Hill, and up to the time of the death of Augusta Foster, were duly paid over to the person or persons who were entitled thereto under item 6 of the will of Martha Hill.

During the year 1934 the par value of the common capital stock of the First National Bank of Tuskaloosa was reduced from $100 to $50 per share; and the only dividend of any kind which has been declared by said bank on its common capital stock since the death of Augusta Foster is the

two per cent. cash dividend hereinabove mentioned.

We deem it unnecessary to set forth in detail the chain of title through which complainants in the court below (appellees here) claim ownership of certificate No. 157 and the two per cent. cash dividend declared thereon, after the death of Augusta Foster.

In the stipulation of facts it is agreed, in effect, that appellees are the lawful owners of the estate in remainder created by item 6 of the will of Martha Hill, and the codicil thereto; and that the First National Bank of Tuskaloosa, as executor of the will of Florence Hill Foster, is entitled to the life estate created by item 6 of the will of Martha Hill and the codicil thereto.

Appellees rest their claim on the theory that the stock dividend, represented by certificate No. 157, together with the cash dividend declared thereon after the death of Augusta Foster, is a part of the corpus of the estate created by item 6 of the will of Martha Hill, and the codicil thereto, and is the property of appellees as remaindermen. While the bank, as executor, insists that the stock dividend, together with the cash dividend declared thereon, is income and a part of the life estate created by item 6 of the will and codicil of Martha Hill.

The record contains evidence to the effect that the stock dividend in question was declared out of funds earned by the bank after the death of Martha Hill.

The record presents the perplexing question of the proper application of stock dividends as between the holder of the life estate and the reversion or remainder. Concerning the problem, it has been said: "Few legal questions present greater intrinsic difficulties, or have called forth a greater contrariety of views and opinions, as well as practical results." Annotations in 12 L.R.A.,N.S., 769; Hayes v. St. Louis Union Trust Co., 317 Mo. 1028, 298 S.W. 91, 56 A.L.R. 1276. Research fails to disclose that the question has been decided in this State.

We are here concerned with stock dividends based on earnings. That is to say, stock dividends based on capitalized surplus or net profits actually or presumptively traceable to such earnings. In this regard, three rules have grown up, the so-called Massachusetts rule, Pennsylvania rule (sometimes called the American rule), and the Kentucky rule.

Under the Massachusetts rule, broadly stated, cash or property dividends are to be regarded as income passing to the life tenant, while stock dividends are to be treated as capital inuring to the benefit of the remaindermen. 17 R.C.L. 630, section 21; Hayes v. St. Louis Union Trust Co., supra. The rule is founded upon the theory that, in the case of cash, and property dividends, there is an actual severance of the subject of the dividend from the corporate assets, whereas stock dividends involve only readjustments of the corporate structure, the corporate assets remaining the property of the corporation as fully as they were before. The case of Minot v. Paine, 99 Mass. 101, 96 Am.Dec. 705, is the leading case supporting the Massachusetts rule.

In applying the rule the courts look to the substance of the corporate action in declaring the dividend, rather than its form in determining whether the dividend is a cash dividend or a stock dividend, the form in which it is declared by the corporation not being conclusive in that regard.

The Massachusetts rule takes no account of the question whether all or part of the dividends were earned before or after the death of the testator, or other event by which the right to the income was severed from the corpus, and makes no attempt whatever to apportion them between the life tenant and the remaindermen in case they were earned partly before and partly after such severance. If the dividend is made from earnings, and is declared during the continuance of the life estate, it goes in its entirety to the life tenant if essentially a cash dividend, and to the remaindermen if essentially a stock dividend, regardless of the period covered by the accumulation of the fund out of which it is made.

The Massachusetts rule is supported in the following jurisdictions: United States courts, Connecticut, Georgia, Illinois, Maine, New York (under statute), North Carolina, Ohio, Virginia, West Virginia and probably Rhode Island.

The Pennsylvania rule rejects the character of the dividend, as a cash or stock dividend as a criterion of the rights of the parties, but inquires as to the time relative to the commencement of the life estate, covered by the accumulation of earnings from which the extraordinary dividend, whether cash or stock, was made. And, if it ascertains that the entire dividend was earned before the commencement of the life interest, awards the entire dividend,

whether cash or stock, to the corpus. If it ascertains that the entire dividend was earned (i. e. earned in the sense that its payment would not impair the book value of the stock as of the date of the commencement of the life interest) after the commencement and during the continuance of the life interest, it awards the entire dividend to income. While if it ascertains that the fund was accumulated partly before and partly after the commencement of the life interest, it undertakes to apportion the dividend, whether stock or cash, between the life tenant and the remaindermen. 14 Corpus Juris 832; 17 R.C.L. 631; 7 R.C.L. 290.

The leading case in support of the Pennsylvania rule is Earp's Appeal, 28 Pa. 368. This rule is in effect in California, Iowa, Maryland, Minnesota, Mississippi, New Hampshire, New Jersey, South Carolina, Tennessee, Vermont and Wisconsin.

This rule mkes the money value of the dividend producing stock at the beginning of the estate the principal or corpus of the estate, rather than the stock itself.

The Kentucky rule likewise makes no distinction between cash and stock dividends. The time when the dividend is declared is the criterion. Any dividend from earnings, cash or stock, ordinary or extraordinary, declared during the term of the life estate, belong to income without regard to whether such earnings accrued prior or subsequent to the beginning of the estate. Hite's Devisees v. Hite's Ex'r, 93 Ky. 257, 20 S.W. 778, 19 L.R.A. 173, 40 Am.St.Rep. 189, is the leading case supporting the so-called Kentucky rule. Delaware also follows the Kentucky rule.

■ At the outset it is to be remembered that the testatrix' actual intention, if discernible from the will, aided by competent and material extrinsic evidence concerning the subjects and objects of the bequests, is the pole star in determining the ownership of the stock dividend and the money involved in this cause. See Title Guarantee, etc., Co. v. Woodward, 238 Ala. 304, 191 So. 363, 129 A.L.R. 1301. There is no evidence in the record touching the point, other than the will and codicil. It is apparent that these instruments fail specifically to declare the testatrix' intention with reference to whether stock dividends should be regarded as principal or income.

■ Where the word "dividend" is used without qualification, it signifies dividends payable in money. 13 Words and Phrases, Permanent Edition, page 85. But appellant insists that where the word "dividend" is qualified by "any, all, each or every," all and *every* stock dividend are included.

■ In some instances such qualification may shed light on the intention of the testatrix. But that intention must be gathered from the will as a whole, aided by the surrounding circumstances, conditions and extrinsic evidence, if any. In the absence of extrinsic evidence in the instant case, we are of the opinion that there is no indicia of intention sufficient to obviate the necessity of making a choice between the various rules on the subject.

As was said in the case of Hayes v. St. Louis Union Trust Co., supra [317 Mo. 1028, 298 S.W. 97, 56 A.L.R. 1276]: "The three doctrines may be summed up by saying the Massachusetts rule considers the *character* of the dividend, the Pennsylvania rule the *source* of the dividend, and the Kentucky rule the *time* of the dividend."

■ Undoubtedly, in cases like the present, the corporate stock itself, and not its value at a given time, is the principal or corpus of the estate created. This view is taken in other phases of trust administration, even in those states following the Pennsylvania and Kentucky rule. Again quoting from Hayes v. St. Louis Union Trust Co., supra: "For instance, it is uniformly conceded that, if corporate stock, so held in trust, increase in value through the accumulation of corporate earnings after the beginning of the trust, and if no dividends are declared, the whole increase belongs to corpus even upon a sale of the stock. 17 R.C.L. p. 632; 21 C.J. pp. 945, 946, 1041; annotations L.R.A.1915C, 851, 13 A.L.R. 1009; Smith v. Hooper, 95 Md. 16, 26, 51 A. 844, 54 A. 95; First National Bank v. Mulholland, 123 Miss. 13, 85 So. 111, 13 A.L.R. 1000; Olcott v. Estate of Charles F. Hoffman, Inc., 127 Misc. 399, 216 N.Y.S. 267, 269; McCoy v. McCloskey, 1922, 94 N.J.Eq. 60, 117 A. 473, 474."

And another illustration from Hayes v. St. Louis Union Trust Co., supra: "When a corporation issues new stock the market value of which is above par, not as a stock dividend, but for subscription and and purchase, the appurtenant legal right of its stockholders to subscribe for the same at par is a valuable right, for they can

take the stock and sell it at a profit, or sell the option or privilege; and yet this right is generally held to belong to corpus, even though the premium be due to surplus or net profits earned after the beginning of the trust. 17 R.C.L. p. 632; annotations, 24 A.L.R. p. 84, 42 A.L.R. p. 458. In the same way, where the new stock is sold by the corporation and it realizes the premium, the profit is regarded as an accretion to the corporate capital and not as income in measuring the rights of life tenants and ,remaindermen to the income from stock of the corporation. Dickinson's Estate, 285 Pa. 449, 453, 132 A. 352. These holdings can be justified on no other theory than thai the dividend yielding *stock*, not its *value* when the trust began, is the principal or capital of the trust estate."

A rule for the allocation of stock dividends must therefore take into consideration the peculiar relation between a corporation and its stockholders, and the essential nature of the corporate stock and stock dividends. It is uniformly held that the earnings and profits of a corporation remain the property of the corporation until severed from the corporate assets and distributed as dividends. Until that time stockholders have no property interest therein.

In the case of Gibbons v. Mahon, 136 U.S. 549, 10 S.Ct. 1057, 1058, 34 L.Ed. 525; the Supreme Court of the United States said: "Whether the gains and profits of a corporation should be so invested and apportioned as to increase the value of each share of stock for the benefit of all persons interested in it, either for a term of life or of years, or by way of remainder in fee; or should be distributed and paid out as income, to the tenant for life or for years, excluding the remainder-man from any participation therein, is a question to be determined by the action of the corporation itself, at such times and in such manner as the fair and honest administration of its whole property and business may require or permit, and by a rule applicable to all holders of like shares of its stock, and cannot, without producing great embarrassment and inconvenience, be left open to be tried and determined by the courts as often as it may be litigated between persons claiming successive interests under a trust created by the will of a single shareholder, and by a distinct and separate investigation, through a master in chancery

or otherwise, of the affairs and accounts of the corporation, as of the dates when the provisions of the will of that shareholder take effect, and with regard to his shares only. In ascertaining the rights of such persons, the intention of the testator, so far as manifested by him, must of course control; but when he has given no special direction upon the question as to what shall be considered principal and what income, he must be presumed to have had in view the lawful power of the corporation over the use and apportionment of its earnings, and to have intended that the determination of that question should depend upon the regular action of the corporation with regard to all its shares."

A stock dividend is not in the ordinary sense a dividend at all. The latter implies a division, a severance from the corporate assets of the subject of the dividend, and a distribution thereof among the stockholders. A stock dividend is nothing more than an incident or process in corporate bookkeeping.

As said in Gibbons v. Mahon, supra, "A stock dividend really takes nothing from the property of the corporation, and adds nothing to the interests of the shareholders. Its property is not diminished, and their interests are not increased. After such a dividend, as before, the corporation has the title in all the corporate property; the aggregate interests therein of all the shareholders are represented by the whole number of shares; and the proportional interest of each shareholder remains the same. The only change is in the evidence which represents that interest, the new shares and the original shares together representing the same proportional interest that the original shares represented before the issue of new ones."

In the case of Towne v. Eisner, 245 U.S. 418, 38 S.Ct. 158, 159, 62 L.Ed. 372, L.R.A. 1918D, 254, the United States Supreme Court, speaking through Mr. Justice Holmes on the same subject, said: "In short, the corporation is no poorer and the stockholder is no richer than they were before. * * * Again, if certificates for $1,000 par were split up into ten certificates each, for $100, we presume that no one would call the new certificates income. What has happened is that the plaintiff's old certificates have been split up in effect and have diminished in value to the extent of the value of the new."

It has been said of the Massachusetts rule that it is arbitrary and inequitable: a rule of convenience and not of justice. On the other hand, the Pennsylvania rule has been commended for its equitable features, but criticized for the difficulties presented in its application. New York appears to have adopted the Massachusetts rule by statute in 1926, both as regards income taxation, Laws of New York, 1926, Vol. 1, page 939, Chapter 543, and general personal property law, Laws of New York 1926, Vol. 2, page 1563, Chapter 843. Prior to 1913, New York followed the Kentucky rule, then designated as the "New York and Kentucky rule." In that year New York adopted the Pennsylvania rule.

Relative to the legislative change from the Pennsylvania rule to the Massachusetts rule, the New York Court of Appeals in the case of People ex rel. Clark v. Gilchrist, 243 N.Y. 173, 153 N.E. 39, 41, said: "The rule previously applied had resulted in so many complications and obscurities as to be almost unworkable in practice. United States Trust Co. v. Haye, 224 N.Y. 242, 120 N.E. 645; Bourne v. Bourne, 240 N.Y. 172, 148 N.E. 180. It involved elaborate accountings for the purpose of determining how far the dividends were the result of profits accumulated before the creation of the trust, and how far the result of profits accumulated thereafter. The Legislature evinced its will that there should be an end to these complexities hereafter in the administration of the law of trusts."

To further illustrate the difficulties encountered in the application of the Pennsylvania rule, we quote from the case of Jones v. Integrity Trust Co., 292 Pa. 149, 155, 140 A. 862, 863, 864, by the court which originated the rule: "The question involved in this case is: How shall certain stock, received by the defendant trust estate as the result of an extraordinary stock dividend of 25 per cent., be divided between the corpus of the trust and the life tenant, who is entitled to the income thereof? To this, the court below, appellant and appellee have each given a different answer. It is certain, therefore, that two of them must be wrong; in reality all three are."

It is significant that the Legislature of Alabama in 1939 adopted the Uniform Principal and Income Act. Acts 1939, page 902. Section 5 of said Act (page 904) reads, in part, as follows: "(1) All dividends on shares of a corporation forming a part of the principal which are payable in the shares of the corporation shall be deemed principal." However, this Act is not controlling here. Section 18 thereof reads, in part, as follows: "(Time of Taking Effect.) This act shall take effect upon approval by the Governor and its terms shall apply (a) to all estates of tenants or remaindermen which become legally effective after that date." Its citation is merely for the purpose of showing the legislative policy of this State.

 We hold that the stock dividend in this case was not income, but was an accretion to the corpus because of its nature and because it represents no money or property severed from capital assets, and is the property of complainants. It follows, of course, that the two per cent. cash dividend of $10 declared on the stock represented by certificate No. 157, after the death of Augusta Foster, accompanies that certificate.

The decree of the lower court is in harmony with the views here expressed, and is in all respects affirmed.

Affirmed.

GARDNER, C. J., and BOULDIN and FOSTER, JJ., concur.