Hart, J.
The issue to be determined is: Where a corporation, at the close of a calendar year, splits-its common stock, whereby the number of shares held by each shareholder is proportionally increased with *15 out payment of consideration for such additional shares, is a shareholder who is a resident of Ohio required, under the intangible tax law of Ohio, to return as of January 1 for that year the total number of shares of the corporation then owned by him, and are such shares taxable as an income-producing investment whose value is measured by the income yield received by the shareholder from the original shares during the previous year and not by the value of the original shares as an income-producing investment measured by the income yield from such shares for the previous year, and the value of additional shares as a non-income-producing investment?
The pertinent part of Section 5323, General Code (Section 5701.06, Revised Code), is as follows:
“The term ‘investments’ as used in this title, includes the following:
“Shares of stock in corporations, associations and joint stock companies, under whatever laws organized * # # J?
The pertinent part of Section 5388, General Code (Section 5711.22, Revised Code), is as follows:
“In listing investments, the amount of the income yield of each for the calendar year next preceding the date of listing shall, excepting as otherwise provided in this chapter, be stated in dollars and cents and the assessment thereof shall be at the amount of such income yield; but any property defined as investments in either of the first two subparagraphs of Section 5323 of the General Code which has yielded no income during such calendar year shall be listed and assessed as unproductive investments, at the true value thereof, in money, on the day as of xohich such investments are required to be listed.” (Italics supplied.)
The pertinent part of Section 5389, General Code (Section 5701.10, Revised Code), is as follows:
“ ‘Income yield’ as used in Section 5388 of the Gen *16 eral Code, and elsewhere in this title means the aggregate amount paid as income by the obligor, trustee or other source of payment to the owner or owners * * * of an investment, whether including the taxpayer or not, during such year, and includes the following:
“* * * in the case of shares of stock, the dividends so paid or distributed * * * whether such payment or distribution is in cash, notes, debentures, bonds, other property or shares of stock, excepting stock of like kind and character of the corporation declaring the dividend * * (Italics supplied.)
Under this plan of intangible taxation, the tax listing date is January 1 of each year, and the income yield of an income producing investment for the preceding year is the measuring stick to determine the value of the investment and the amount of the tax to be paid. In case of a non-income-producing investment, the tax is fixed at three mills on its true value in money. Shares of stock received prior to tax listing date are investments as of that date and subject to tax in the succeeding year.
It seems clear and indisputable that Marsh’s investment which produced the income yield of $7,500 for the year 1950 was his interest in Masonite which, prior to December 28, 1950, was represented by 2,500 shares of the common stock, and after December 28,1950, and on January 1, 1951, by 5,000 shares of the same stock without any change in the investment. Before December 28, 1950, he owned 2,500 shares out of a total of 675,276 shares, or .37 per cent of the corporate shares. After December 28, 1950, and on January 1, 1951, he owned 5,000 shares out of a total of 1,350,552 shares, or .37 per cent of the corporate shares. The investment remained exactly the same although after December 28, 1950, by the split it was represented by twice as many units, each worth one half as much as *17 each of the previous units. The tax is based on the value of the investment and Marsh’s investment was in no way changed by the stock-split.
This operation and its consequences are well reflected and expressed in the following statement in the case of Towne v. Eisner, Collr., 245 U. S., 418, 62 L. Ed., 372, 38 S. Ct., 158:
“ ‘A stock dividend really takes nothing from the property of the corporation, and adds nothing to the interests of the shareholders: Its property is not diminished, and their interests are not increased. * * * The proportional interest of each shareholder remains the same. The only change is in the evidence which represents that interest, the new shares and the original shares together representing the same proportional interest that the original shares represented before the issue of the new ones.’ Gibbons v. Mahon, 136 U. S., 549, 559, 560. In short, the corporation is no poorer and the stockholder is no richer than they were before. Logan County v. United States, 169 U. S., 255, 261. If the plaintiff gained any small advantage by the change, it certainly was not an advantage of $417,450, the sum upon which he was taxed. * * * What has happened is that the plaintiff’s old certificates have been split up in effect and have diminished in value to the extent of the value of the new.” See, also, Eisner, Collr., v. Macomber, 252 U. S., 189, 64 L. Ed., 521, 40 S. Ct., 189, 9 A. L. R., 1570, and Millar et al., Admrs., v. Mountcastle, 161 Ohio St., 409.
The total result of the change in the capital structure of Masonite was that the income yield of $7,500 received by Marsh in 1950 was from an investment represented by 2,500 shares of stock before December 28, 1950, and by 5,000 shares of stock after December 28, 1950. It follows that on January 1, 1951, the in *18 come yield of $7,500 for the year 1950 was produced by the investment represented by 5,000 shares and not by 2,500 shares. The position of the commissioner that the income yield of $7,500 should be deemed to be the income yield on 2,500 of the 5,000 shares outstanding as of January 1,1951, and that the remaining 2,500 shares should be regarded as a non-income-producing investment would result in double taxation of Marsh’s investment so far as the tax related to the latter group of shares. This position is unrealistic and untenable.
Although on a different basis, the decision of the Board of Tax Appeals is affirmed.

Decision affirmed.

Weygandt, C. J., Middleton, Taet, Zimmerman, Stewart and Lamneck, JJ., concur.