I disagree with the conclusions of the majority on its interpretation of the language of this instrument.
It is true that profits on the sale of shares of stock are ordinarily to be allocated to principal. See First NationalBank of Tuskaloosa v. Hill, 241 Ala. 606, 4 So.2d 170 (1941);see also Code of 1975, §§ 19-3-271, -272. However, this proposition holds true only if there is no expression of a different intention on the part of the settlor, for it is well settled in this jurisdiction that "[t]he intention of thesettlor is the law of the trust and if the nature, subject matter and objects are reasonably ascertainable and the scheme not inconsistent with some established rule of law or public policy, that intention must control and the courts will sustain and give it effect." (Emphasis added.) Stariha v. Hagood,252 Ala. 158, 40 So.2d 85 (1949); see Thurlow v. Berry, 249 Ala. 597, 32 So.2d 526 (1947).
The provision of the trust instrument under which the trustee sought to allocate the $900,000 to income instead of principal gave to the trustee "the power to determine whether any money or property coming into its hands shall be treated as a part of the principal of the trust estate, or a part of the income therefrom. . . ." The language utilized by the testator in the provision quoted above clearly and unambiguously grants the trustee the authority to use its discretion in determining whether property received by the trust is to be held as principal or distributed as income. The trust document as a whole supports this conclusion, for an examination of that instrument reveals that the settlor sought to vest in the trustee a large amount of discretion in dealing with the trust estate. For example, the trustee was given the power to invest as it saw fit, regardless of any restrictions which would otherwise have been imposed by law. It was also given the power to form a corporation to which it could transfer all trust assets.
The majority's reliance on the provision allowing invasion of the corpus of the trust for the support, education, or comfort of the beneficiary is misplaced under the circumstances of this case. Although that provision would seem to serve as a limitation on the trustee's power to distribute principal, I fail to perceive its relationship *Page 13 
to the trustee's power to determine what constitutes principal. The former power comes into being only after the exercise of the latter. As a result, the trustee under the will of Morris W. Bush had the authority to classify the property received by the trust as income. Cases from other jurisdictions support this position. See, e.g., Sherman v. Sherman, 5 Ohio St.2d 27,213 N.E.2d 360 (1966); Hopkins v. Cleveland Trust Co.,120 N.E.2d 457 (Ohio App. 1954); Dumaine v. Dumaine, 301 Mass. 214,16 N.E.2d 625 (1938).
However, I agree with the majority that the trial court abused its discretion in awarding the guardian ad litem a fee of $50,000. The lower court found that the guardian had expended 175 hours on the case; on an hourly basis, then, the fee awarded comes to $285.71 per hour. This award is clearly disproportionate when viewed in the light of the guardian's owntestimony that he would have set a rate of $75.00 per hour ifthe remaindermen in this case had been adults seeking hisservices, rather than infants for whom he was appointed. Assuming arguendo that the professional responsibility inherent in defending the interests of minors is weightier than that which attends the representation of adults, the legal issue in this case — the proper construction of a clause in a will — was the same regardless of whether the client was an adult or a child. The decision of the trial court was ironic in its effect, for had the remaindermen here been adults they could have employed the very attorney who was appointed for them for roughly one-fourth the fee that was awarded. Obviously the nature, risks and complexities of some cases call for higher fees than others. This is not one of those in the former category, however. Therefore, a reduction in the fee to be allowed is in order.
BLOODWORTH, MADDOX and EMBRY, JJ., concur.