PALMER v. PULLMAN CO. et al.

(District Court, N. D. New York. August 12, 1918.)

1. LIFE ESTATES ⬧⟹15(2)—WHAT CONSTITUTES "INCOME"—STOCK DIVIDENDS.

Where residuary estate was devised for life to complainant, with remainder to others, and consisted principally of stock, and the corporation, after the decree of distribution, by resolution increased its capital stock, "in order to represent the capitalization of the company," the life tenant was not entitled to the shares to which the possession of the before issued shares entitled their owner, since such new shares were not "income."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

2. LIFE ESTATES ⬧⟹15(2)—RIGHT TO INCOME—WHAT CONSTITUTES INCOME—STOCK DIVIDENDS.

Where by such distribution of additional stock the value of each original share was lessened, complainant was not entitled to receive the additional shares.

3. LIFE ESTATES ⬧⟹15(2)—RIGHT TO INCOME—WHAT CONSTITUTES INCOME—STOCK DIVIDENDS.

Where only one-third of the amount of the additional stock was taken from the surplus earnings after the decree which fixed the values of the respective estates, plaintiff, as life tenant, was not entitled even to the proportional amount of one-third of the stock.

In Equity. Suit by Walter B. Palmer against the Pullman Company, wherein, on removal to the District Court, Gertrude E. Wagoner and another were made defendants. Decree dismissing the bill on the merits.

This is a suit by Walter B. Palmer for a decree requiring the defendant the Pullman Company to issue and deliver to him individually 20 shares of its stock for each 421.6 shares of the stock of said defendant. The estate of one Esther G. Palmer owns 411 shares of the stock of said Pullman Company and a stock dividend has been declared. The plaintiff claims this stock dividend should issue to him as life tenant of said 411 shares, while the remaindermen claim it should issue to the estate. The claim of plaintiff grows out of and is founded on certain facts which appear in the opinion. The complaint also demands $15,000 damages for the withholding of such shares, but no proof of damages has been given. The suit was commenced in the Supreme Court of the state of New York against the Pullman Company as sole defendant, whence it was removed to the United States District Court for the Northern District of New York, and then the other defendants were brought in and made parties defendant.

C. J. Palmer, of Little Falls, N. Y., for plaintiff.

Alexander & Green, of New York City (Allan McCulloh, of New York City, of counsel), for defendant Pullman Co.

Arnold, Bender & Hinman, of Albany, N. Y., for defendant Wagoner.

Chas. A. Talcott, of Utica, N. Y., for defendant Whiffen.

RAY, District Judge (after stating the facts as above). Esther G. Palmer, of Utica, Oneida county, N. Y., died, leaving a last will and testament, January 5, 1908, and her will was duly probated in that county February 10, 1908. By said will said testatrix gave all the

rest, residue, and remainder of her estate to her husband, Walter B. Palmer, the plaintiff herein, for and during the period of his natural life, to use and enjoy the income and interest thereof, and on his death such rest, residue, and remainder, real and personal, is given by said will of the testatrix to her niece, Gertrude E. Mills, now Gertrude E. Wagoner, and her cousin, Caroline R. Whiffen, share and share alike. The said rest, residue, and remainder of said estate consisted and consists of 411 shares of the capital stock of the defendant the Pullman Company, and same is in the possession of Walter B. Palmer, the executor of said will, pursuant to the decree of the Surrogate's Court of Oneida county, N. Y., but on deposit with a designated depository, where by the terms of such decree it is to remain during the life of said Palmer.

March 21, 1910, at a meeting of the stockholders of said the Pullman Company, the following resolutions were duly adopted:

"Whereas, the value of the assets of this company exceeds the par value of the capital stock by more than twenty million dollars ($20,000,000):

"Resolved, that for the purpose of representing the capitalization of this company existing surplus assets to the extent of twenty million dollars ($20,000,000), the capital stock of the company is hereby increased to one hundred and twenty million dollars ($120,000,000), and the proper officers of the company are hereby directed to issue additional stock to the amount of twenty million dollars ($20,000,000); and

"Resolved, that the directors be authorized to distribute said twenty million dollars ($20,000,000) capital stock pro rata, to stockholders of the company, in the ratio of twenty (20) shares to each one hundred (100) shares held by stockholders of record at the close of business on the 30th day of April, 1910."

On the same day, at a meeting of the board of directors of said company, the following resolution was duly adopted, viz.:

"Resolved, that said increase of twenty million dollars ($20,000,000) capital stock be distributed pro rata to the stockholders of the company in the ratio of twenty (20) shares to each one hundred (100) shares held by the stockholders of record at the close of business on the 30th day of April, 1910, and the proper officers of the company are hereby directed to carry this resolution into effect."

Walter B. Palmer, the life tenant, claims this stock dividend, and the remaindermen claim it as a part of the estate to be ultimately divided between them in equal shares. The question is: Who is entitled thereto?

July 12, 1909, on the judicial settlement of the accounts of Walter B. Palmer, as executor of the last will and testament of said Esther G. Palmer, the balance of the estate was established as consisting of cash $493.97, and 411 shares of said Pullman stock, of the then cash value of $60,417; total, $60,910.97—subject to commissions, $1,042.94, and $28 costs, and the executor was directed to convert certain of such stock into cash to pay such commissions and costs, which he did, leaving certain shares undisposed of and constituting the residuary estate. The decree as to such residue contains the following:

"That the said executor, Walter B. Palmer, continue to hold said estate; that he pay over to himself, the said Walter B. Palmer, from time to time, during his life, *all dividends, interest, and income arising out of said estate*

*and said Pullman Palace Car stock,* and after his death the said estate be divided, share and share alike, between Gertrude E. Mills and Carrie R. Whiffen."

[1] The decree also provides that the said executor is to hold such stock, but keep same on deposit in a certain bank named, subject to the inspection of the remaindermen, and is not to be removed or sold without their consent. Nothing is said in this decree as to "stock dividends," and I think "the dividends" referred to in the decree are the ordinary cash dividends declared and made by the Pullman Company in the usual manner. The question arises whether the ownership of this stock dividend, consisting of additional capital stock of the Pullman Company, is to be determined under and according to the rule declared by the Supreme Court of the United States in Gibbons v. Mahon, 136 U. S. 549, 558, 10 Sup. Ct. 1057, 34 L. Ed. 525, and Towne v. Eisner, 245 U. S. 418, 38 Sup. Ct. 158, 62 L. Ed. 372, or under and according to the rule declared by the Court of Appeals of the state of New York in Matter of Osborne, 209 N. Y. 450, 477, 485, 103 N. E. 723, 823, 50 L. R. A. (N. S.) 510, Ann. Cas. 1915A, 298, and Matter of Schaefer, 178 App. Div. 117, 165 N. Y. Supp. 19.

If the surplus earnings and profits of the Pullman Company had been accumulated from time to time, and put in bank or specially invested for the purpose of paying a special or extraordinary dividend in cash to stockholders at a subsequent time, I think the dividend subsequently declared from earnings and profits arising during the life of this trust, and thus accumulated, would belong to the life tenant. But this was not done. Such earnings and profits were not taken out of the general property of the Pullman Company, and put in a special or separate fund, and devoted to any such purpose to be subsequently executed. At the end of each year there was a cash surplus, and also rolling stock, equipment, fixtures, and investments in securities belonging to the Pullman Company. The surplus, after payment of ordinary running expenses and repairs, was used so far as necessary for improvements of its properties and additions from time to time as the board of directors should determine, and what was not actually used or kept on hand was invested, not for the purpose of a subsequent dividend in cash, but for such general purposes, it might be dividends, as the board of directors should subsequently determine. It was always within the power and discretion of this board of directors to use up all the surplus earnings, including the investments, for repairs, additions, and extensions. This surplus, not paid out in making the ordinary and regular dividends, became a part of the capital of the company, temporarily at least.

In March, 1910, the stockholders and board of directors passed the resolutions quoted, and determined *not* to declare and to pay an additional and extraordinary cash dividend to stockholders, but to increase the capital stock of the company "for the purpose of representing the capitalization of the company," and to divide and issue it to its stockholders according or in proportion to their respective holdings. These surplus earnings were thus devoted to an increase of the capital of the company, and it was duly apportioned to show the respective in-

terests of the stockholders. The estate of Esther G. Palmer was the owner of 411 shares, and this addition to the capital stock was apportioned by the resolution to the estate, title in the executor as such, not in the life tenant, and when that capital, thus increased, is divided, it will go, under the rule of the Supreme Court of the United States and of the Massachusetts, Connecticut, Maine, Rhode Island, and English courts, to the remaindermen, not to the life tenant. The life tenant will get his interest therein, which will be and is the cash dividends, if any, hereafter declared on all capital stock, including such additional stock. In Towne v. Eisner, Collector, etc., 245 U. S. 418, 426, 38 Sup. Ct. 158, 62 L. Ed. 372, the Supreme Court of the United States, reversing Towne v. Eisner (D. C.) 242 Fed. 703, has very recently (January 7, 1918) reiterated the rule declared in Gibbons v. Mahon, 136 U. S. 549, 10 Sup. Ct. 1057, 34 L. Ed. 525, and the court said in the case of a stock dividend:

"Notwithstanding the thoughtful discussion that the case received below, we cannot doubt that the dividend [stock dividend] was capital as well for the purposes of the Income Tax Law *as for distribution between tenant for life and remainderman.*"

In this case I think I am bound to follow these decisions of the Supreme Court of the United States. The New York cases do not give construction to any statute of that state bearing on this question, and there has been no construction of this will by any court requiring a contrary holding. The New York rule would seem the more equitable, inasmuch as, should it be followed in this case, there would be an ascertainment and apportionment of the surplus earnings of the Pullman Company accruing since the death of Esther G. Palmer or the decree of the surrogate, and which actually went or will go into this stock dividend apportioned to the stockholders held by the executor of her estate.

Some of the earlier New York cases—Williams v. W. U. Tel. Co., 93 N. Y. 162, and Hyatt v. Allen, 56 N. Y. 553, 15 Am. Rep. 449—seem to be somewhat at war with Matter of Osborne, 209 N. Y. 450, 103 N. E. 723, 823, 50 L. R. A. (N. S.) 510, Ann. Cas. 1915A, 298; but the latter case must be deemed to state the modern New York rule. But this Osborne Case in no way shakes the case of Gibbons v. Mahon, supra, as it is expressly approved and followed in Towne v. Eisner, supra. The Williams Case, supra, did not involve the rights of life tenant and remaindermen in stock dividends. In Gibbons v. Mahon, supra, 136 U. S. at page 559, 10 Sup. Ct. at page 1059, 34 L. Ed. 525, the court says:

"Therefore when a distribution of earnings is made by a corporation among its stockholders, *the question whether such distribution is an apportionment of additional stock representing capital, or a division of profits and income, depends upon the substance and intent of the action of the corporation, as manifested by its vote or resolution; and ordinarily a dividend declared in stock is to be deemed capital, and a dividend in money is to be deemed income of each share.*"

In the instant case there is nothing in the language of the resolution of either the stockholders or board of directors indicating a pur-

pose to make a division of profits and income. On the other hand, the language of the resolution forbids this construction. The resolution of the stockholders says:

"Whereas, the value of the assets of this company exceeds the par value of the capital stock: * * * Resolved, that *for the purpose of representing the capitalization of this company* existing surplus assets to the extent of $20,000,000, the capital stock of the company is hereby increased to $120,-000,000, and the proper officers of the company are hereby directed to issue additional stock to the amount of $20,000,000." (Italics mine.)

That is, $20,000,000 additional stock is to be issued *"for the purpose of representing the capitalization of the company,"* not for the purpose of making a division of profits and income. This must be controlling as to the 'purpose of this stock dividend, if regard is had to the decision of the Supreme Court.

[2] But, aside from this, I see no theory on which the plaintiff is entitled to all the shares of "stock dividend" stock. The testatrix died January 4, 1908, the will was proved February 10, 1908, and the decree on settlement, by which the shares of the Pullman Company stock was set apart and directed held as residuary estate, was made and entered July 12, 1909. The gift to this plaintiff, Walter B. Palmer, is by the eighth clause of the will, viz.:

"All the rest, residue and remainder of my estate, real and personal, I give, devise and bequeath to my husband Walter B. Palmer, for and during the period of his natural life to use and enjoy the income and interest thereof and upon his death I give, devise and bequeath the said rest, residue and remainder of my estate, real and personal, to my niece Gertrude E. Mills of Albany, N. Y., and my cousin Carrie R. Whiffen of Utica, N. Y., in equal portions, share and share alike."

There is no specific gift of this Pullman Company stock. It was a part of the general estate, and did not take on the character of "rest, residue and remainder" held for Walter B. Palmer until the estate was settled and the decree of July 12, 1909, was entered. The decree shows that shares of this Pullman stock had been sold, and it is presumed that all dividends on same paid between the death of Esther G. Palmer and the accounting were accounted for. The amount of the residuary estate, and of what it consisted, was determined on the entry of that decree. This is the rest, residue, and remainder of which Walter B. Palmer is given the use and interest and income. It was set apart by the decree of the surrogate in the form of 411 shares of Pullman stock, of the then value of $60,417, subject to commissions, $1,042.94, and expenses $28, less the cash in hand, $493.97, and such executor was authorized by the decree to sell enough of this stock to pay the balance of such commissions.

The decree, to which Walter B. Palmer assented, directed this stock to be held in specie. This decree fixed the then cash value of this stock at $147 per share. This value at that time (July 12, 1909) was determined by the value of all the property of the Pullman Company then owned by it. As between Walter B. Palmer and the remaindermen, he was entitled to have this kept good, if the property of the Pullman Company would do it, and this was the right of the re-

maindermen as well; and Mr. Palmer was entitled to the interest and income—that is, dividends in cash declared and paid on this stock from the date of that decree and nothing more. If the property of the Pullman Company became more valuable, and the stock set apart by the decree became more valuable, this increase added to the value of the "rest, residue and remainder," but did not necessarily add to the dividends or income of the life tenant. If by reason of the making of this stock dividend April 30, 1910 (the increase of capital stock), the value of the 411 shares was lessened or impaired, the life tenant as well as the remaindermen was entitled to have it made good by this additional stock, and, in any event, as this stock dividend in great part came out of the value of the rest, residue, and remainder the life tenant is entitled to all dividends thereon, but not to the stock itself (new or additional stock), as that is neither interest nor income nor *cash* dividends, unless it be that some part of this new or additional stock actually represents and comes from income or interest or cash dividends on this "rest, residue and remainder."

The statements and figures in evidence show that the value of the "rest, residue and remainder" has not been impaired or lessened by the mere declaration and making of this "stock dividend," but that it would be by turning over to the plaintiff individually as his own this new or additional stock. The value of each of the 411 shares of stock, constituting the rest, residue and remainder, was $147. After the making of the stock dividend, and the consequent increase of stock, the value of each share is only $109.13. True, the number of shares belonging to the estate and to the rest, residue, and remainder is increased; but the value of each share is decreased from $147 per share to $109.13 per share. These are the figures presented, and as to which there is no dispute.

[3] The statement in evidence, Exhibit A, shows the "composition of $20,000,000," the stock dividend in question, and, from it, it appears that of earnings, etc., after July 12, 1909, there went into this new stock from the "insurance reserve fund" $206,064.18, and from "amount added to surplus" from August 1, 1909, to February 28, 1910, the sum of $5,972,741.79. All the balance of this $20,000,000 was from "insurance reserve fund" from July 31, 1893, to July 31, 1909, extension of plant in 1907, "reserve for doubtful accounts" in 1908, prior to July 31, and amounts added to surplus in 1906, 1907, 1908, and 1909, prior to or on July 31 of that year. The "insurance reserve fund" is a sum set apart to make good losses not covered by insurance. Assuming that the $5,972,741.71 was taken from the surplus earnings of the company from August 1, 1909, to February 28, 1910, a proportional part of this, as represented in the new stock, is all this plaintiff would be entitled to under the New York rule of apportionment. Clearly earnings and accumulations earned and made prior to the setting aside of these shares of stock in July, 1909, as the rest, residue, and remainder are not interest or income or dividends accruing to this plaintiff on such a well-defined and specified "rest, residue and remainder" ascertained and determined by the decree of the Surrogate's Court of July 12, 1909.

Assuming that this plaintiff was entitled to the earnings and income of the rest, residue, and remainder of the estate, as it was, prior to the decree of July 12, 1909, and that such earnings and income went into the general estate and was used in payment of debts, etc., the decree of the Surrogate's Court settled all that and fixed the "rest, residue and remainder," both in value at that time and of what specific property it consisted. It was represented by these 411 shares of this stock. That value of the stock was fixed and determined by the value of all the property of every name and nature owned by the Pullman Company at the date of that decree. If by subsequent action of the stockholders and board of directors some of that property has been taken, or set apart, and is now represented by additional shares of stock, this stock dividend, the share and interest of the estate held for the use of the plaintiff for his life, remainder to the ultimate beneficiaries named, is not changed, except in form. This, of course, is not considering the fact that in this new stock we have represented $5,972,741.79 of earnings for 1909, 1910, after August 1, 1909, and up to February 28, 1910.

Is this plaintiff entitled to have a proportional part of that new stock set apart and issued to him, such part as represents his interests in that $5,972,741.79, considering and treating it as interest and income derived from the 411 shares of stock and to which he was entitled under the will and the decree of the Surrogate's Court? The stockholders by vote have said that this $5,972,741.79, instead of being divided amongst the stockholders in accordance with their stock holdings in a cash dividend, shall be held as a part of the capital of the company and represented by new or additional capital stock issued to the stockholders, and the board of directors, being thus authorized by the stockholders, by resolution directed that this increase of capital stock "be distributed pro rata to the stockholders of the company in the ratio of 20 shares to each 100 shares held by the stockholders of record as of the 30th day of April, 1910," etc. In Gibbons v. Mahon, supra, 136 U. S. 559, 10 Sup. Ct. 1059, 34 L. Ed. 525, the court says:

"A stock dividend really takes nothing from the property of the corporation, and adds nothing to the interests of the shareholders. Its property is not diminished, and their interests are not increased. After such a dividend, as before, the corporation has the title in all the corporate property; the aggregate interests therein of all the shareholders are represented by the whole number of shares; and the proportional interest of each shareholder remains the same. The only change is in the evidence which represents that interest; the new shares and the original shares together representing the same proportional interest that the original shares represented before the issue of new ones."

The court (136 U. S. at page 561, 10 Sup. Ct. at page 1059, 34 L. Ed. 525) further says:

"In Great Britain, it is well settled that where a corporation, whether authorized or unauthorized by law to increase its capital stock, accumulates and invests part of its earnings, and afterwards apportions them among its shareholders as capital [and that is what was done in the instant case], the amount so apportioned must be deemed an accretion to the capital of each share, *the income of which only is payable to the tenant for life.*"

In Bailey v. Railroad Co., 22 Wall. (U. S.) 604, 22 L. Ed. 840, it is stated that:

"As a general rule, stock dividends, even when they represent net earnings, become at once a part of the capital of the company" and "such a dividend, if earned and declared, necessarily increases the value of the old stock, if new stock is not issued, and in that mode reaches substantially the same result."

In Williams v. Western Union Tel. Co., 93 N. Y. 162, the Court of Appeals of the state of New York said:

"When a corporation has a surplus, whether a dividend shall be made, and, if made, how much it shall be, and when and where it shall be payable, rest in the fair and honest discretion of the directors *uncontrollable by the courts.*"

In the instant case, to make a decree that any part of this additional stock be issued and delivered to this plaintiff as his individual property, instead of to him as a stockholder and as executor, would be for this court to reverse and change the action of the stockholders and board of directors of the Pullman Company, and to proceed contrary to the English rule, the rule of the Supreme Court of the United States, which I think controlling on this court, and the rule in Massachusetts, Rhode Island, and Maine. See cases cited in Gibbons v. Mahon, 136 U. S. pp. 564, 565, 10 Sup. Ct. 1057, 34 L. Ed. 525.

I think this action cannot be maintained on the facts proved and that there must be a decree dismissing the bill on the merits, but, in view of all the facts and the not harmonious decisions of the courts, without costs.

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes