CAPITAL ESTATES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 104036. Promulgated April 17, 1942.

*James B. Howe, Esq.*, for the petitioner.
*Harry R. Horrow, Esq.*, for the respondent.

OPINION.

STERNHAGEN: 1. Petitioner demands a dividends paid credit under Revenue Act of 1936, section 27 (e),[1] and to that end seeks to establish that the dividend paid by it in January 1937 was not such a nonincome dividend as is covered by section 115 (f) (1),[2] but a taxable dividend in the hands of the shareholders, as set forth in section 115 (f) (2).[3] Although the shareholders are not here, their duty to include the dividend in their income must be determined as the foundation for the petitioner's case, since its dividends paid credit can only exist if to the shareholders the dividend is taxable. The credit of the corporation is correlative with the taxability of the shareholders. To prove that the dividend "constitutes a taxable dividend in the hands of all shareholders" under section 115 (f) (2), petitioner seeks to prove that it was, at the election of the shareholders, payable either in its stock or in money.

We are of opinion that the payment of the dividend in the alternative was not permissible but that as to 90 percent it was required to be made only in stock. The shareholders had no election. The dividend was in fact paid in stock, but petitioner says that this was because all the shareholders exercised an election to have it so payable, and that the company's intention was that they should have such an election. We think that this has not been supported. The intention was that petitioner should have a dividends paid credit, as the Brewing Co. had, and petitioner was ready to go a long way to get it; but for some reason it failed to give the election, as the Brewing Co. had. When the dividend was declared by the directors, the resolution described it as payable 90 percent in stock and 10 percent in cash, i. e.,

---

[1] SEC. 27. CORPORATION CREDIT FOR DIVIDENDS PAID.

\* \* \* \* \* \* \*

(e) TAXABLE STOCK DIVIDENDS.—In case of a stock dividend or stock right which is a taxable dividend in the hands of shareholders under section 115 (f), the dividends paid credit with respect thereto shall be the fair market value of the stock or the stock right at the time of payment.

[2] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

\* \* \* \* \* \* \*

(f) STOCK DIVIDENDS.—

(1) GENERAL RULE.—A distribution made by a corporation to its shareholders in its stock or in rights to acquire its stock shall not be treated as a dividend to the extent that it does not constitute income to the shareholder within the meaning of the Sixteenth Amendment to the Constitution.

[3] (2) ELECTION OF SHAREHOLDERS AS TO MEDIUM OF PAYMENT.—Whenever a distribution by a corporation is, at the election of any of the shareholders (whether exercised before or after the declaration thereof), payable either (A) in its stock or in rights to acquire its stock, of a class which if distributed without election would be exempt from tax under paragraph (1), or (B) in money or any other property (including its stock or in rights to acquire its stock, of a class which if distributed without election would not be exempt from tax under paragraph (1)), then the distribution shall constitute a taxable dividend in the hands of all shareholders, regardless of the medium in which paid.

one share and 66¢ for each 6½ shares held. Not a word was said about an election or which would give a shareholder a right to demand anything other than one share and 66¢ for each 6½ shares held.

The earlier notice to the shareholders was not the declaration of the dividend, but was an inquiry which turned out to be without substance. It was couched with extreme subtlety. It stated first, in the subjunctive, that if the shareholder *were to elect* to take a cash dividend he *would be entitled* to receive one dollar per share, and then, "*if you elect* to take stock you *will receive* one share for each 6½ shares held." He was then told that an election to take cash would frustrate the dividend altogether, since, as he already knew, "the company has no means of paying the dividend except by a dividend in stock." Even if these had been the terms of the actual declaration, they would have presented but a Hobson's choice—an "or else"—which was not a true election between two available dividends, but a choice between a stock dividend and no dividend at all. Cf. *Skenandoa Rayon Corporation* v. *Commissioner*, 122 Fed. (2d) 268; certiorari denied, 314 U. S. 696. Since a true stock dividend in the present state of the law is not income, *Eisner* v. *Macomber*, 252 U. S. 189, it would be frivolous to attempt to compel the shareholders to include the dividend in income merely because the corporation had made this hypothetical statement and asked them to sign a paper which it called an "election", recognizing in terms that the dividend was only available in shares. Cf. *Pacific Grape Products Co.*, 42 B. T. A. 914; *Humphryes Manufacturing Co.*, 45 B. T. A. 114.

No force can be given to the shareholders' resolution of November 18, 1936, giving their approval to the directors' proposal of a stock dividend, even though it was passed in response to the directors' wish for a "clear mandate" and recited the importance of the shareholders' option of taking cash or stock. Shareholders have nothing to say in control of the kind of a dividend; they must abide by the action of the directors, who alone are responsible for the choice of its terms. *Gibbons* v. *Mahon*, 136 U. S. 549; *Long* v. *Rike*, 50 Fed. (2d) 124. The shareholders' resolution was merely hortatory.

Petitioner recognizes the devastating effect of the language of the declaration in the resolution as set forth in its minute book, and has introduced oral testimony of the recollection of three of the directors who attended the meeting. Such evidence might conceivably serve to disclose the action of the directors' meeting better than the formal minutes, and its tendency to do so is enough to justify its admissibility. But the testimony must be weighed with the other evidence to find the facts. The recollections of the witnesses several years after the meeting were not clear and their testimony was not convincing. The other evidence indicates that the tentative thought of making the

dividend elective was not in fact carried out because the corporation was not in a cash position to enable it to incur the risk of carrying it out. The corporation was in a dilemma and resolved it by foregoing the tax credit and having the assurance that it would not distribute cash; it kept the cash and let the credit go (to borrow from the Rubaiyat).

Since we hold that no election was given the shareholders, it is unnecessary to discuss the meaning of the parenthetical provision permitting an election to be exercised before or after the declaration of the dividend. It is enough to say that it assumes that by the declaration an election will be given, and permits its exercise to be made either before or after the declaration.

The respondent's disallowance of dividends paid credit is sustained.

2. The petitioner, failing in the claim for a dividends paid credit, demands that the deficiency be reduced by the amount of tax on the stock dividend which was erroneously withheld by it and paid as withholding agent to the collector at Wilmington. The respondent, without disputing the error of petitioner's withholding and payment, contends that the Board has no jurisdiction to apply such an offsetting credit, and that section 143 (f)[4] prohibits the credit.

In *Houston Street Corporation* v. *Commissioner*, 84 Fed. (2d) 821, it was held that the Board has jurisdiction to redetermine a deficiency in income tax for which a withholding agent is in the first instance liable. Thereafter the Commissioner, in G. C. M. 17274, C. B. XVI–1, p. 159, adopted the view, arising from the *Houston Street* opinion, that the administrative provisions and jurisdiction of the Board relating to an ordinary deficiency of a primary taxpayer were equally applicable to a tax collectible from a withholding agent. We can see no reason why the jurisdiction of the Board, which is now sufficient to comprehend a petition by a withholding agent assailing a deficiency in the withheld tax, should not also be sufficient to comprehend a claim by the same withholding agent that an erroneous withholding and payment of a purported tax should reduce a deficiency otherwise determined under the same title of the act.

The claim for offsetting credit is, however, met by the last clause of section 143 (f). The credit is to be made, under the section, to a withholding agent who makes an overpayment "unless the amount of such tax was actually withheld by the withholding agent." This means actually withheld from the primary taxpayer. *Paulœr* v. *United States*, 23 Fed. Supp. 821. The evidence shows that the amount

---

[4] SEC. 143. WITHHOLDING OF TAX AT SOURCE.

\* \* \* \* \* \* \* \*

(f) REFUNDS AND CREDITS.—Where there has been an overpayment of tax under this section any refund or credit made under the provisions of section 322 shall be made to the withholding agent unless the amount of such tax was actually withheld by the withholding agent.

of tax paid by petitioner to the Wilmington collector was in fact withheld, and there is nothing to justify an inference that the petitioner has counteracted this withholding by paying or distributing the amount to the shareholders. Indeed it appears that the additional amount of $9,579.29, which, after the amendment of the Canadian Treaty, was released from the charge of half (5 percent) of the original 10 percent tax, is still withheld by the petitioner from the shareholders, and from this it may be inferred that the $10,253.54 is likewise withheld from the shareholders. Manifestly, if the withholding agent is given a refund or a credit against its own deficiency and is able to withhold the refunded amount from the shareholders, it may be benefiting by the credit in precisely the way that the restrictive clause of the section was intended to prevent. We are of opinion that no refund or credit may be made.

*Decision will be entered under Rule 50.*