Scileppi, J. (dissenting).
Section 183 of the Tax Law (applicable to appellants P. J. Garvey and Boss-Linco) imposed upon each transportation and transmission corporation an annual franchise tax upon the net value of the corporation’s issued capital stock. It provides further, however, that ‘[1] if the dividends paid on the par value of any kind of capital stock during any year * * * amount to six or more than six per centum, the tax upon such kind of capital stock shall be at the rate of one-quarter of a mill for each one per centum of dividends paid and shall be computed upon the par value of such capital stock ” (emphasis added).
Section 186 of the Tax Law (applicable to appellants Brooklyn Union and Rochester Gas) provided that: “ Every corporation * * * principally engaged in the business of supplying water, steam or gas * * * shall pay for the privilege of exercising its corporate franchise * * * a tax which shall be five-tenths of one per centum upon its gross earnings from all sources within this state, and three per centum upon the actual amount of dividends paid during each year ending on the thirty-first day of October in excess of four per centum upon the actual amount of paid in capital employed in this state by such corporation ” (emphasis added).
The facts, briefly stated, are as follows:
I. P. J. GARVEY CASE
The appellant, a small Buffalo-based moving and storage company, declared a four for one stock dividend upon its 187 shares of outstanding stock. The aggregate par value of the newly issued shares ($74,800) was transferred on appellant’s books from its earned surplus to stated capital account. The Tax Commissioner imposed a franchise tax of $1,870 based upon the amount transferred from earned surplus to stated capital, having determined that such a transfer is a “ dividend paid ” within the contemplation of section 183.
*859 H. BROOKLYN UNION OASE
In November, 1961 the appellant paid pursuant to section 186 its franchise tax amounting to $175,204.11. This amount represented $96,710.34 based on gross earnings and $78,493.77 based on the amount of dividends paid in excess of 4% of paid-in capital. Thereafter the Commissioner imposed an additional tax of $426,477.79 based on appellant’s declaration of a stock dividend of 10% on its outstanding common stock. Here again the amount taxed (in this case pursuant to § 186) was based on the amount transferred from earned surplus to stated capital.
III. ROCHESTER GAS CASE
During the years 1960-1962 the appellant paid out a total of approximately $21,000,000 in cash dividends and paid a franchise tax of approximately $250,000 pursuant to the excess dividends requirement of section 186. During this same three-year period, however, the appellant had also declared stock dividends on which the Commissioner imposed an additional tax of $300,000 based upon the amount transferred from earned surplus to stated capital.
IV. BOSS-LINCO CASE
In 1962 the appellant, a closely held corporation by members of one family, decided to offer new stock to members of the public. It was deemed advisable, however, that, in order to make the new offering more attractive to the public, the appellant had to recapitalize. Thereafter the stock structure of the appellant was changed by substituting 1,000,000 shares of class A and 300,000 shares of class B stock (each at $1 par value) for the 1,829 previously authorized shares of 5% noncumulative preferred stock ($100 par value) and 2,500 previously authorized shares of common stock ($100 par value). After reclassification, however, the par value of the newly issued shares exceeded that of the previously issued shares by $97,100 and thus it became necessary to make the book transfer of that amount from earned surplus to stated capital. Here, again, the Commissioner imposed a franchise tax (pursuant to § 186) upon the amount transferred finding that such was a “ dividend paid ” under the applicable statute.
*860 While there are factual distinctions amongst the cases and the applicable taxing statutes are not the same in each case, the question presented is nevertheless uniform: Whether the issuance of stock certificates as evidence of a book transfer from earned surplus* *to stated capital constitutes a “ dividend paid ” within the meaning of the applicable taxing statutes 1
In 1910 our court affirmed People ex rel. Pullman Co. v. Glynn (198 N. Y. 605) on the opinion at the Appellate Division (130 App. Div. 332). It was on the basis of that affirmance that the Appellate Division confirmed the determinations of the Tax Commissioner in the instant cases.
The Pullman case presented the question of the applicability of the excess dividends portion of a former franchise taxing statute (Tax Law, § 182) to stock dividends, the precise question presented herein.[1] In confirming the assessment, the Appellate Division in Pullman stated: “Stock * * * dividends * * * have frequently been declared and have been before the court for consideration, and I think the general understanding in commercial affairs and with the courts is that they represent a benefit to the stockholders and a distribution of profits. Whether a distribution of stock pro rata among the stockholders of a corporation is a dividend representing profits or an adjustment of capital account depends upon the circumstances of each case, and if such distribution represents surplus earnings it may fairly be treated as a dividend and as the income from, the original stock ” (130 App. Div. 332, 333-334).
The analysis functioning in Pullman was that the profits had been distributed to the stockholders and they in turn had merely reinvested in the corporation.
It is my opinion that the decisions in the United States Supreme Court and in our own court subsequent to the Pullman decision have repudiated the rationale of that case and, therefore, I conclude that Pullman should be overruled.
In Towne v. Eisner (245 U. S. 418), decided nine years after the decision in Pullman, the issue presented was whether or not a stock dividend distributed to stockholders was taxable under *861 the Federal Revenue Act of 1913, which provided that net income should include “ dividends ” and “ gains or profits and income derived from any source whatever The Supreme Court held that stock dividends were neither “ dividends ” nor other ‘ ‘ income ’ ’ within the meaning of the statute. In delivering the opinion of the court, Justice Holmes stated: “ ‘ A stock dividend really takes nothing from the property of the corporation, and adds nothing to the interests of the shareholders. Its property is not diminished, and their interests are not increased * * * The proportional interest of each shareholder remains the same. The only change is in the evidence which represents that interest, the new shares and the original shares together representing the same proportional interest that the original shares represented before the issue of the new ones.’ Gibbons v. Mahon, 136 U. S. 549, 559, 560. In short, the corporation is no poorer and the stockholder is no richer than they were before * * *[2] What has happened is that the plaintiff’s old certificates have been split up in effect and have diminished in value to the extent of the value of the new.” (245 U. S. 418, at pp. 426-427.)
In 1920 the Supreme Court in Eisner v. Macomber (252 U. S. 189) was called upon to amplify its decision in Towne v. Eisner when confronted with the question of whether or not stock dividends were "income" under the Sixteenth Amendment to the Federal Constitution. In describing the transactions here involved, the court stated:
“ This, however, is no more than a book adjustment, in essence not a dividend but rather the opposite; no part of the assets of the company is separated from the common fund, nothing distributed except paper certificates that evidence an antecedent increase in the value of the stockholder’s capital interest resulting from an accumulation of profits by the company, but profits so far absorbed in the business as to render it impracticable to separate them for withdrawal and distribution” {supra, at p. 210; emphasis added).
“ A ‘ stock dividend ’ shows that the company’s accumulated profits have been capitalized, instead of distributed to the stock *862 holders or retained as surplus available for distribution in money or in kind should opportunity offer. Far from being a realization of profits of the stockholder, it tends rather to postpone such realization, in that the fund represented by the new stock has been transferred from surplus to capital, and no longer is available for actual distribution ”[3] (supra, at p. 211).
While our own court has not been called upon since the Pullman case to determine the precise question presented herein, the underlying reinvestment theory of Pullman was rejected in a factually related case decided in 1936. In People ex rel. Adams Elec. Light Co. v. Graves (272 N. Y. 77) the question presented was whether the transfer of a portion of the corporation’s earned surplus to its stated capital account was in effect a declaration or payment of a “ dividend ’ ’ within the meaning of that term as used in one of the very same franchise taxing statutes applicable herein (section 186). The sole factual distinction between Adams and the cases at bar was that no additional stock certificates were issued to evidence that book transfer. In reversing the Appellate Division, which had relied heavily on language from the Pullman decision in confirming the assessment, our court stated: “ The measure of value of each share of stock before as well as after the increase of capital stock being the proportionate interest of the holder thereof in the net assets of the corporation, the stock of each stockholder was worth the same after such increase as before. The entries of capital stock and surplus were both on the liability side of the balance sheet and the footing of the liability column was no different after the entry than before ” (supra, at pp. 80-81).
It is clear that although the Adams court cited Pullman with approval, they nevertheless rejected the underlying reinvestment theory of Pullman by holding that a mere book transfer from earned surplus to stated capital does not constitute a ‘ dividend paid ’ ’ because the net assets of the corporation and the worth of each shareholder’s interest therein remains unchanged. After such a determination, it cannot be reasonably argued that the added factor of the mere issuance of pieces of paper as evidence of that book transfer should allow the imposi *863 tion of the franchise tax when clearly, without it, no such tax could be imposed.
In reaching their determination that stock dividends were within the contemplation of the franchise taxing statute, the court in Pullman placed great weight on the fact that the ‘ ‘ general understanding in commercial affairs and with the courts is that [stock dividends] represent a benefit to stockholders and a distribution of profits ” (supra, at p. 333).
By reaffirming the Pullman decision, the majority has taken a giant step backwards from that which has become the general understanding in commercial affairs and with the courts today— stock dividends do not represent a benefit to shareholders and are not a distribution of profits.
Accordingly, the orders of the Appellate Division should be reversed.
Orders affirmed, etc.

. Although the Boss-Linco ease does not involve the declaration of a stock dividend, the steps taken to effectuate the recapitalization plan which led the Commissioner to conclude that a dividend had been paid were nevertheless the • same as in the other cases and, therefore, when reference is made to stock dividends, it is intended to encompass all four cases.

. While it is true that the stockholder may in the end benefit from an increase in the number of shares because of the fluctuations in market value, the benefit should in no way be attributed to the book value of the corporation which, of course, is the primary concern in franchise taxation.

. Reacting to the decision in Eisner v. Macomber (supra) the Legislature amended our own State income tax law to exclude stock dividends from taxable dividends (L. 1926, ch. 543, § 1).